**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

*In re:*

GRAVEN INTERNATIONAL GROUP INC.,

Debtor. /

Case No.: 26-24032-SMG

Chapter 11
Subchapter V

**DEBTOR'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 363, BANKRUPTCY RULES 4001(b) AND 6003, FOR INTERIM ORDER (A) AUTHORIZING USE OF CASH COLLATERAL; (B) FINDING THAT SECURED CREDITOR IS ADEQUATELY PROTECTED; AND (C) SCHEDULING FINAL HEARING**

***[Hearing requested at the Court's earliest availability]***

*Statement of Exigent Circumstances*

**The Debtor requests that this Motion be heard on an emergency basis pursuant to Bankruptcy Rules 4001(b)(2) and 6003. Through this Motion, the Debtor seeks entry of an interim order authorizing the use of cash collateral in which its prepetition lender, City National Bank of Florida, may assert an interest. The Debtor requires immediate access to its cash to cover operational expenses, and preserve the going concern value of its business.**

**The Debtor's operating account is maintained at City National Bank of Florida, which also holds the Debtor's prepetition secured[1] debt and may assert a contractual right of setoff against the Debtor's deposit accounts. Absent immediate authority to use cash collateral pursuant to the Budget, the Debtor's operations will be disrupted, resulting in immediate and irreparable harm to the estate and its creditors.**

**The Debtor further requests that the Court waive the provisions of Local Rule 9013-4(b)(3), which requires an affirmative statement that a *bona fide* effort was made to resolve the issues raised in this Motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.**

[1] Nothing herein should be construed as an admission as to the validity, priority, or extent of the secured debt.

Debtor-in-Possession, GRAVEN INTERNATIONAL GROUP INC. (the "Debtor"), by and through undersigned proposed[2] counsel, pursuant to 11 U.S.C. §§ 105, 361, 362, and 363, Bankruptcy Rules 4001(b) and 6003, respectfully requests entry of an order (a) authorizing the Debtor to use cash collateral on an interim basis; (b) approving adequate protection to City National Bank of Florida ("CNB"); and (c) scheduling a final hearing (the "Motion"), and in support thereof, states as follows:

## PRELIMINARY STATEMENT

By this Motion, the Debtor seeks to use the cash collateral of CNB pursuant to the interim budget (the "Budget"), attached hereto as **Exhibit "A."**[3] The specific purpose of the proposed use of cash collateral can be found in the Budget, and is generally intended to preserve the going concern value of the Debtor's business and maintain ordinary course operations for the benefit of all creditors and parties in interest. The Debtor respectfully submits that CNB will be adequately protected as to the use of cash collateral requested herein because: (i) the use of cash collateral will preserve the Debtor's enterprise value; and (ii) the Debtor proposes to grant CNB replacement liens on post-petition assets. Debtor respectfully requests entry of an interim order substantially in the form attached hereto as **Exhibit "B."**

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

[2] Contemporaneously herewith, the Debtor is filing an application to approve the retention of the undersigned attorney.

[3] The interim portion of the Budget is intended to cover such expenses as are necessary to prevent immediate and irreparable harm to the Debtor pending a final hearing and is denoted as "Interim Period".



agentis
Legal Advocates & Advisors

2. The statutory predicates for the relief requested herein are sections 105, 361, 362, and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## ESSENTIAL TERMS OF THE PROPOSED USE OF CASH COLLATERAL

Pursuant to Bankruptcy Rule 4001(b)(1)(B), the material terms of the proposed use of cash collateral are as follows:

- Entity with an interest in cash collateral: CNB, and, to the extent any such party asserts an interest, the parties identified in Section C below.
- Purpose: The Debtor seeks to use cash collateral to continue its business operations and to pay its ordinary course operating expenses, pursuant to the Budget, that are necessary to avoid immediate and irreparable harm to the estate pending a final hearing on the Motion.
- Duration: From the Petition Date through the final hearing on the Motion, and thereafter pursuant to such budget as the Court may approve at the final hearing.
- Budget: The Debtor shall limit expenditures to those specifically authorized in the Budget, subject to the variance described below. The Debtor requests approval: (i) to exceed any line item on the Budget by an amount equal to ten percent (10%) of each such line item; or (ii) to exceed any line item by more than ten percent (10%) so long as the total of all amounts in excess of all line items for the Budget does not exceed ten percent (10%) in the aggregate of the total Budget.
- Prepetition Debt: The Debtor shall not pay any pre-petition debt except as may be specifically authorized by this Court, upon proper notice, motion, and hearing[4].
- Replacement Liens: The Debtor proposes to provide CNB a post-petition replacement lien pursuant to 11 U.S.C. § 361(2) on and in all property of the Debtor acquired or generated after the Petition Date, solely to the extent of any diminution in value of CNB's interest in cash collateral, and solely to the same validity, extent, and priority, and of the same kind and nature, as the lien(s) CNB had on the Debtor's assets as of the Petition Date; provided, however, that the replacement liens shall not attach to (i) claims and causes of action under Chapter 5 of the Bankruptcy Code or the proceeds thereof, or (ii) the proceeds of any post-petition financing approved by this Court.

[4] The Debtor is contemporaneously filing a motion to approve payment of prepetition wages – those sums are included in the Budget to be paid in the ordinary course of business.



agentis Legal Advocates & Advisors

## BACKGROUND

### A. The Debtor and its Operations

3. On October 21, 2026 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its affairs as a debtor-in-possession pursuant to sections 1107(a), 1108, and 1184 of the Bankruptcy Code.

4. No examiner, trustee, or statutory committee has been appointed, except the Subchapter V Trustee in this case.

5. The Debtor is a Florida corporation with its principal place of business at 16098 West State Road 84, Weston, Florida 33326. The Debtor operates a pre-school called Tiny Planet, with locations in Weston and Miami, Florida, providing early education programs and childcare services.

6. For additional background information on the Debtor, including an overview of its business, its liabilities, and the events precipitating its Chapter 11 filing, the Debtor respectfully refers the Court and parties in interest to its *Sworn and Verified Case Management Summary*, contemporaneously filed with this Motion, and incorporated herein by reference.

### B. Prepetition Secured Debt Owed to City National Bank of Florida

7. On May 29, 2025, the Debtor and CNB entered into two loan transactions, each documented and executed on the Debtor's behalf by its principal, Mr. Ugalde.[5]

[5]The subject promissory notes, security agreements, guaranties, and related loan documents (collectively, the "Loan Documents") have been omitted for expediency but available to any party in interest upon request to the undersigned counsel.



agentis
Legal Advocates & Advisors

***i. The Term Loan***

8. The Debtor executed a promissory note, dated May 29, 2025, in favor of CNB in the principal amount of $375,000.00 (the "Term Note," and the loan evidenced thereby, the "Term Loan"). The Term Note bears interest at a fixed rate of 7.770% per annum, computed on a 365/360 basis, and is payable in 83 monthly installments of $5,823.78 commencing June 29, 2025, with a final irregular payment, estimated at $5,822.98, due at maturity on May 29, 2032.

9. In connection with the Term Note, the Debtor executed a security agreement, Mr. Ugalde executed a personal guaranty, and CNB filed a UCC-1 financing statement with the Secretary of State.

10. Upon information and belief, as of the Petition Date, approximately $322,227.00 remained outstanding under the Term Note.

***ii. The Line of Credit***

11. The Debtor also executed a second promissory note, dated May 29, 2025, in favor of CNB evidencing a revolving line of credit in the maximum principal amount of $125,000.00 (the "LOC Note," and together with the Term Note, the "Notes").

12. In connection with the LOC Note, the Debtor executed a security agreement, Mr. Ugalde executed a personal guaranty, and CNB filed a UCC-1 financing statement with the Secretary of State.

13. Upon information and belief, as of the Petition Date, approximately $124,501.82 remained outstanding under the LOC Note.

14. As of the Petition Date, the Debtor maintained one of its operating accounts at CNB (the "CNB Account"), which held approximately $10,612.54 as of the Petition Date.



agentis
Legal Advocates & Advisors

15. Upon information and belief, CNB will assert that it is owed approximately $446,728.82, and that such indebtedness is secured by a first lien in substantially all of the assets of the Debtor, including the cash on deposit in the CNB account as of the Petition Date.

16. The Debtor is not aware of any party other than CNB that holds or asserts an interest in the Debtor's cash.

## RELIEF REQUESTED AND BASIS THEREFOR

17. Upon information and belief, the Debtor believes that any cash or cash equivalents, funds, or proceeds of or derived from the collateral securing the obligations of the Debtor to CNB may constitute cash collateral within the meaning of section 363(a) of the Bankruptcy Code.

18. An immediate and critical need exists for the Debtor to be permitted access to cash collateral in order to continue to operate its business and preserve its going concern value. In the absence of an order authorizing the use of cash collateral, serious and irreparable harm to the Debtor and its estate will occur.

19. Pursuant to section 363(c)(2) of the Bankruptcy Code, if CNB's interest in cash collateral is valid, the Debtor may use such cash collateral only with the consent of CNB or with Court approval.

## CASH COLLATERAL AND THE RELIEF SOUGHT BY THE DEBTOR

20. By this Motion, the Debtor seeks an emergency interim hearing in accordance with Bankruptcy Rule 4001(b)(2). At the interim hearing, the Debtor will seek entry of an order authorizing the Debtor to use cash collateral to continue its business operations and to pay its ordinary course operating expenses, pursuant to the Budget, that are necessary to avoid immediate and irreparable harm to the estate pending a final hearing on the Motion.



agentis
Legal Advocates & Advisors

21. The Debtor's expenditures shall be limited to those expenditures specifically authorized in the Budget, where amounts are so provided, on a cumulative line-by-line basis. In addition, the Debtor shall not pay any pre-petition debt except as may be specifically authorized by this Court, upon proper notice, motion, and hearing.

22. Further, by this Motion, the Debtor further seeks a final hearing on this Motion, to be held no earlier than fourteen (14) days after service of this Motion in accordance with Bankruptcy Rule 4001(b)(2).

23. The Debtor believes that CNB is adequately protected notwithstanding the Debtor's use of its cash collateral, as the Debtor continues to generate revenue. Therefore, the Debtor proposes, subject to approval of this Court, to provide CNB a post-petition replacement lien pursuant to 11 U.S.C. § 361(2) on and in all property of the Debtor acquired or generated after the Petition Date, solely to the extent of any diminution in value of CNB's interest in cash collateral, and solely to the same validity, extent, and priority, and of the same kind and nature, as the lien(s) CNB had on the Debtor's assets as of the Petition Date.

24. The Debtor also requests approval: (i) to exceed any line item on the Budget by an amount equal to ten percent (10%) of each such line item; or (ii) to exceed any line item by more than ten percent (10%) so long as the total of all amounts in excess of all line items for the Budget does not exceed ten percent (10%) in the aggregate of the total Budget.

## APPLICABLE AUTHORITY FOR RELIEF REQUESTED

### A. Standard under Section 363 of the Bankruptcy Code.

25. The Debtor's use of estate property is governed by section 363 of the Bankruptcy Code. Section 363(c)(1) provides that a debtor may use estate property in the ordinary course of business without notice or hearing. Section 363(c)(2) imposes specific limitations upon property



agentis
Legal Advocates & Advisors

that constitutes cash collateral and provides that a debtor can only use, sell, or lease cash collateral if the entity with an interest in the cash collateral consents or the Court authorizes such use. 11 U.S.C. § 363(c)(2). Accordingly, for the reasons stated herein, this Court should approve the Debtor's use of cash collateral pursuant to section 363(c)(2) of the Bankruptcy Code.

### B. **The Court Should Enter an Order Authorizing the Use of Cash Collateral Because the Debtor is Providing CNB with Adequate Protection.**

26. The Debtor is providing and will provide adequate protection to CNB as contemplated and required by sections 361, 363(c)(2)(B), and 363(e) of the Bankruptcy Code, and hereby seeks the Court's approval thereof. The Bankruptcy Code does not expressly define "adequate protection," but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in such property. *See* 11 U.S.C. § 361. What constitutes adequate protection must be evaluated on a case-by-case basis. *In re Swedeland Dev. Group Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (citing *In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987)); *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985). Adequate protection is meant to ensure that the secured creditor receives the value for which it originally bargained. *Swedeland*, 16 F.3d at 564 (citing *O'Connor*, 808 F.2d at 1396) ("the whole purpose of adequate protection for a creditor is to ensure that the creditor receives the value for which he bargained pre bankruptcy"). Courts have noted that "the essence of adequate protection is the assurance of the maintenance and continued recoverability of the lien value during the interim between the filing . . . and the confirmation." *In re Arriens*, 25 B.R. 79, 81 (Bankr. D. Or. 1982). The focus of the requirement is to protect a secured creditor from diminution in value during the use period. *See In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *In re Becker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).



agentis
Legal Advocates & Advisors

27. The Debtor's requested use of cash collateral and the protections afforded to CNB herein are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of CNB's collateral.

***i. The Use of Cash Collateral Will Preserve the Debtor's Going Concern Value, Which Will Inure to the Benefit of the Estate.***

28. The continued operation of the Debtor's business will preserve and maintain its going concern value and enable the Debtor to continue to operate. However, if the Debtor is not allowed to use cash collateral, business operations will be substantially interrupted. This could result in a significant diminution in the value of the Debtor's assets (including the cash collateral) to the detriment of CNB, unsecured creditors, and the bankruptcy estate.

29. It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor as a going concern:

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

*In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984).

30. Accordingly, courts authorize the use of cash collateral to enhance or preserve the debtor's going concern value. For example, in *In re Stein*, 19 B.R. 458 (Bankr. E.D. Pa. 1982), the court allowed a debtor to use cash collateral where the secured party was undersecured, finding that the use of cash collateral was necessary to the debtor's continued operations and the creditor's "secured position can only be enhanced by the continued operation of the [debtor's business]." *Id.* at 460; *see also Federal Nat. Mort. v. Dacon Bolingbrook Assocs.*, 153 B.R. 204, 214 (N.D. Ill. 1993); *In re Constable Plaza Assoc.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991); *In re Dynaco Corp.*, 162 B.R. 389, 395-96 (Bankr. D.N.H. 1993) (finding that the alternative to the debtor's use



agentis
Legal Advocates & Advisors

of cash collateral, termination of its business, would doom reorganization and any chance to maximize value for all creditors); *In re Karl A. Neise, Inc.*, 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally secured creditor adequately protected by lien on postpetition property acquired by the debtor; debtor can use cash collateral "in the normal operation of their business").

31. The Debtor will use cash collateral in the ordinary course of its business to continue to operate and maintain its operations. If the Debtor cannot continue to use cash collateral, it would likely be forced to cease operations. This cessation would irreparably damage the Debtor's business by causing, among other things, employee attrition, lost revenues, loss of customer relationships and business reputation. By contrast, granting authority will allow the Debtor to maintain operations and preserve the going concern value of its business, which will inure to the benefit of CNB and all other creditors.

***ii. CNB is Adequately Protected by the Grant of Replacement Liens on Post-Petition Assets and the Additional Protections Offered.***

32. The Bankruptcy Code expressly provides that granting a replacement lien is a means of adequate protection. 11 U.S.C. § 361(2). Granting replacement liens provides ample adequate protection of the secured creditor's interest in cash collateral. *See, e.g.*, *In re O'Connor*, 808 F.2d at 1393; *In re Dixie-Shamrock Oil & Gas, Inc.*, 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984).

33. CNB's collateral consists principally of accounts, inventory, equipment, and general intangibles. As the Debtor collects receivables in the ordinary course, it generates new receivables and may acquire new inventory, if any, which will be subject to CNB's replacement liens. The Debtor will thus adequately protect CNB's interest in cash collateral by providing post-petition security interests in the Debtor's assets of the same type as CNB held pre-petition, to the extent the Debtor's use of cash collateral results in a post-petition decrease in the value of CNB's



agentis
Legal Advocates & Advisors

collateral. Such post-petition security interests will be of the same validity and priority as CNB's pre-petition liens and security interests.

34. The Debtor believes that use of cash collateral pursuant to the terms and conditions set forth above is fair and reasonable and adequately protects CNB. Accordingly, for the foregoing reasons, the Debtor submits that this Court's approval of the Debtor's use of CNB's cash collateral is proper.

**WHEREFORE**, the Debtor respectfully requests entry of an interim order substantially in the form attached hereto as **Exhibit "B"** (a) authorizing the Debtor to use cash collateral pursuant to the Budget; (b) finding that CNB is adequately protected; (c) granting replacement liens and the other adequate protection described herein in favor of CNB; (d) scheduling a final hearing on the Motion; and (e) granting such other and further relief as this Court deems equitable and appropriate under the circumstances.

Dated: October 22, 2026

Respectfully submitted,

AGENTIS PLLC
***Proposed Counsel for Debtor-in-Possesion***
45 Almeria Avenue
Coral Gables, Florida 33134
T. 305.722.2002

By: */s/ Jacqueline Calderín*
Jacqueline Calderín
Florida Bar No: 134414
jc@agentislaw.com



agentis
Legal Advocates & Advisors

# EXHIBIT "A"

## Budget

**6 month budget** | **Tiny Planet Weston**

| | INTERIM PERIOD 10/20/2026 | INTERIM PERIOD 11/1 - 11/15 | 11/16-11/30 | Dec-26 | Jan-27 | Feb-27 | Mar-27 | Apr-27 |
|---|---|---|---|---|---|---|---|---|
| **AVAILABLE CASH** | | | | | | | | |
| [Beginning of month] | **$20,019** | **$22,854** | **$43,399** | **$19,649** | **$38,899** | **$47,549** | **$47,500** | **$47,750** |
| **Cash Receipts** | | | | | | | | |
| Tuition | $8,265 | $105,791 | $8,265 | $114,056 | $121,556 | $121,556 | $121,556 | $121,556 |
| Matriculation/Enrollment fee | | | | | $7,000 | | | |
| DIP from Mr. Ugalde | $25,000 | | | $25,000 | | | | |
| **Total Cash Receipts** | **$33,265** | **$105,791** | **$8,265** | **$139,056** | **$128,556** | **$121,556** | **$121,556** | **$121,556** |
| **Total Cash Available** | **$53,284** | **$128,645** | **$51,664** | **$158,705** | **$167,455** | **$169,105** | **$169,056** | **$169,306** |
| **USES** | | | | | | | | |
| **Operating Expenses** | | | | | | | | |
| Average Rent (including projected CAM) | | $ 39,225 | | $ 39,225 | $ 39,225 | $ 39,225 | $ 39,225 | $ 39,225 |
| Gross Wages (Operations) | $ 24,496 | $ 24,496 | $ 24,496 | $ 48,992 | $ 48,992 | $ 48,992 | $ 48,992 | $ 48,992 |
| Payroll Expenses (Taxes, etc.) | $ 3,919 | $ 3,919 | $ 3,919 | $ 7,839 | $ 7,839 | $ 7,839 | $ 7,839 | $ 7,839 |
| Utilities | | $ 1,750 | $ 1,750 | $ 3,000 | $ 3,000 | $ 3,500 | $ 3,500 | $ 3,500 |
| Supplies (Office, school, and kids snacks) | $ 200 | $ 250 | $ 250 | $ 500 | $ 100 | $ 500 | $ 500 | $ 500 |
| Repairs and Maintenance | $ 200 | $ 250 | $ 250 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 |
| Operations and billing software | | $ 5,000 | | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 |
| Insurance (workers comp and commercial) | $ 1,480 | $ 1,900 | | $ 1,900 | $ 1,900 | $ 1,900 | $ 1,900 | $ 1,900 |
| Accounting/tax prep | | | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 |
| Permits/licenses | $ 135 | | | | | $ 300 | | |
| Meals for students | | $ 5,500 | | $ 5,000 | $ 5,000 | $ 5,500 | $ 5,500 | $ 5,500 |
| Janitorial services | $ - | $ 1,000 | $ 1,000 | $ 1,500 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 |
| Internet and phones | | $ 1,955 | | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 |
| **Total Operating Expenses** | $ 30,430 | $ 85,245 | $ 32,015 | $ 115,306 | $ 115,406 | $ 117,106 | $ 116,806 | $ 116,806 |
| **CHAPTER 11** | | | | | | | | |
| Subchapter V trustee | | | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 |
| Legal | | | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 |
| Total Ch 11 | $ - | $ - | | $ 4,500 | $ 4,500 | $ 4,500 | $ 4,500 | $ 4,500 |
| Total Uses | **$ 30,430** | **$ 85,245** | **$ 32,015** | **$ 119,806** | **$ 119,906** | **$ 121,606** | **$ 121,306** | **$ 121,306** |
| [End of month] | **$ 22,854** | **$ 43,399** | **$ 19,649** | **$ 38,899** | **$ 47,549** | **$ 47,500** | **$ 47,750** | **$ 48,000** |

# EXHIBIT "B"

**Proposed Order**



agentis
Legal Advocates & Advisors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

*In re:* Case No.: 26-24032-SMG

GRAVEN INTERNATIONAL GROUP INC., Chapter 11
Subchapter V

Debtor. /

**ORDER GRANTING DEBTOR'S EXPEDITED MOTION FOR INTERIM ORDER (A) AUTHORIZING USE OF CASH COLLATERAL; (B) FINDING THAT SECURED CREDITOR IS ADEQUATELY PROTECTED; AND (C) SCHEDULING FINAL HEARING**

THIS MATTER came before the Court for a preliminary hearing on __________, 2026 at __: __ a.m./p.m. (the "Hearing") on the *Debtor's Expedited Motion Pursuant to 11 U.S.C. §§ 105, 361, 362, and 363, Bankruptcy Rules 4001(b) and 6003, for Interim Order (A) Authorizing Use of Cash Collateral; (B) Finding that Secured Creditor is Adequately Protected; and (C) Scheduling Final Hearing* [Dkt. No. ___] (the "Motion")[6] filed by Graven International Group Inc (the

[6]Capitalized terms not expressly defined herein bear the meaning ascribed to them in the Motion.

"Debtor"). Through the Motion, the Debtor seeks an order (a) authorizing the Debtor to use cash collateral on an interim basis; (b) approving adequate protection to City National Bank of Florida ("CNB"); and (c) scheduling a final hearing. The Court, having considered the Motion, the arguments and proffers of counsel, the record in its entirety, and for the reasons stated in open court that shall constitute the Court's record, does **Find** that**:**

A. Service of the Motion and notice of the Hearing were adequate and appropriate under the circumstances of this chapter 11 case as contemplated by 11 U.S.C. § 102(l) and Bankruptcy Rule 4001(b)(2).

B. The use of cash collateral pursuant to the Interim Budget is necessary to prevent immediate and irreparable harm and is in the best interest of the estate.

C. CNB is adequately protected by virtue of the replacement liens on the Debtor's post-petition acquired assets.

Accordingly, the Court does **ORDER** that:

1. The Motion is **GRANTED** on an interim basis subject to the terms and conditions set forth below.

2. Subject to the provisions of this Order, the Debtor is authorized to use cash collateral as of the Petition Date going forward to pay: (i) amounts expressly authorized by this Court; (ii) the current and necessary expenses set forth in this Order and the Budget plus an amount not to exceed ten (10) percent for any line item per month and cumulatively per month of up to ten (10) percent and thereafter in accordance with Provision 4 below; and, (iii) such additional amounts as may be expressly approved in writing by the CNB or by further order of this Court.

3. As adequate protection for the extent of the Debtor's use of cash collateral, CNB shall have, as of the Petition Date, a replacement lien pursuant to 11 U.S.C. § 361(2) on and in all

property acquired or generated post-petition by the Debtor to the same extent and priority and of the same kind and nature as the CNB's pre-petition liens and security interests in the cash collateral.

4. The Court shall retain jurisdiction to enforce the terms of this Interim Order. The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court.

5. **Final Hearing.** A Final Hearing has been scheduled for _______, 2026 at ______:_____ a.m. / p.m. (the "Final Hearing").

6. The Debtor is directed to file and serve upon all interested parties a notice of proposed budget for which the Debtor is seeking approval on or before 3 business days prior to the Final Hearing.

7. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

8. The Court retains jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

# # #

**Submitted by:**
Jacqueline Calderin
Florida Bar No.: 134414
jc@agentislaw.com
45 Almeria Avenue
Coral Gables, Florida 33134
T: 305.722.2002

*Attorney Calderin is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.*